but dimly lighted, and that she did not notice the opening nor hear the warning.

It is not impossible that the verdict of the jury may have been influenced by a slight confusion as to the effect of the crowded condition of the station platform. The plaintiff testified that it was crowded, but did not attribute any negligence to the defendant by reason of such crowding. The court in the main charge instructed the jury, in effect, that if the plaintiff was pushed into the opening (which was not claimed) the defendant was not liable, but that the defendant was bound to foresee the ordinary perils of the traffic, including the crowding at certain times of day, and to take reasonable precautions against the effects of such perils. This portion of the charge amounted to the submission to the jury of a question which was not in the case. Upon his attention being called to this part of the charge, the learned justice withdrew it as charged, but in effect repeated it, saying :

"It is not negligence to permit crowding; but I say it is obliged, in view of the crowding, to take such reasonable precautions as will reasonably protect its passengers from injury."

This modification was excepted to, and, while it states the law correctly enough, it was inapplicable to the case on trial, and was calculated to distract the attention of the jurors from the real issues in the case.

The judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

---

BOYER v. METROPOLITAN SEWING MACH. CO.

(Supreme Court, Appellate Division, First Department. November 6, 1908.)

1. PATENTS (§ 218*)—CONTRACTS—ROYALTIES—ACCRUAL OF RIGHT.
    Under a contract whereby plaintiff sold his "invention" to defendant's assignor, who agreed to pay the costs of procuring letters patent, to have the device ready for the market within six months, and to pay plaintiff a royalty upon certain devices sold, and whereby it was agreed that the royalty provision should be effective during the life of the letters patent, the manufacture and sale of the device upon which the royalties depended was not contingent upon the issuance of a patent; the last-mentioned clause of the agreement being intended to limit the time beyond which royalties were not to be paid, and not the time when payment should begin.
    [Ed. Note.—For other cases, see Patents, Dec. Dig. § 218.*]

2. CONTRACTS (§ 170*)—CONSTRUCTION BY PARTIES—EFFECT.
    On a judicial construction of a contract, the practical construction given it by the parties is entitled to great weight.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 753; Dec. Dig. § 170.*]

Appeal from Special Term.

Action by William H. Boyer against the Metropolitan Sewing Machine Company. From a judgment for plaintiff, defendant appeals. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before PATTERSON, P. J., and McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Louis Marshall, for appellant.

Benjamin N. Cardozo, for respondent.

SCOTT, J. Plaintiff's assignor, one Berger, invented an improved sewing machine attachment, and on November 8, 1902, made an agreement with the Manhattan Machine Supply Company, the predecessor in interest of the present defendant. By that agreement Berger sold to the machine supply company for the sum of $300 his invention, and agreed to assign any improvements therein that he might thereafter invent. The Manhattan Machine Supply Company, on its part, agreed to pay the costs of procuring letters patent for said inventions, and further agreed to use due diligence in preparing to produce the device, and specifically agreed to have it ready for market within six months after the assignment of the invention. It further agreed to use its best efforts to increase the sale of the device. It was further stipulated that the Manhattan Machine Supply Company would pay to said Berger a royalty of $10 upon every device which they would sell, either attached to a sewing machine or unattached; that such royalties should be payable in January and July in each year, accompanied by a sworn statement of all such sales made during each preceding period of six months. It was also agreed that the agreement should be binding upon each of the parties thereto, and his or its successors, assigns, or legal representatives, and that if the machine supply company should fail to perform the contract on its part, or should fail to manufacture the device and to supply the demand therefor, it or its successors or assigns would reassign the letters patent to said Berger.

The machine supply company and its successors in interest proceeded to manufacture and sell the patented device, accounting to Berger regularly and paying him royalties at the rate specified in the contract down to January 1, 1905. In the meantime the machine supply company applied for letters patent upon the said invention, and the application is still pending, because the Patent Office is unwilling to issue so broad a patent as the defendant desires, and the latter refuses to accept the limited patent which is offered. Since January 1, 1905, the defendant has refused to pay any further royalties, although it continues to manufacture and sell the device invented by Berger. It justifies its refusal upon the following clause in the contract:

"It is also understood and agreed that the royalty provision of this agreement shall be for a period covered by the life of the original letters patent granted on the aforesaid invention unless sooner terminated by mutual consent."

The contention in this regard is that, since the life of the patent does not begin until the patent itself is issued, no royalties can become payable until that time. This construction is, as it seems to us, forbidden by the terms of the contract itself, as well as by the practical construction put upon it by the parties down to January 1, 1905.

The assignment was of an invention, not of a patent, and it was left with the machine supply company and its successors in interest to ap-

ply for, and, if possible, obtain, the patent. The manufacture and sale of the device, upon which the royalties depended, was not made contingent upon the issue of a patent, but was to begin within six months from the assignment of the inventions, whether a patent had then been obtained or not, and in fact such manufacture and sale did begin and has gone on without a patent. The clause above quoted, construed in the light of the surrounding circumstances and of the other provisions of the contract, clearly was intended to limit the time beyond which royalties were not to be paid, and not the time when the payment of such royalties should begin; and this was the practical construction given to the contract by the parties, which of itself carries great weight. The construction contended for by the appellant would lead to the inequitable result that the defendant would continue to be the owner of Berger's invention, would be able to go on manufacturing and selling the device without paying any royalties therefor, and, by refusing to accept such a patent as could be obtained, might continue this state of affairs indefinitely. Such a result cannot be tolerated, if the contract is open, as we think it is, to a more equitable and reasonable construction.

The judgment below, which directs a reassignment of the invention and an accounting for the royalties earned, but not paid, is right, and must be affirmed, with costs. All concur.